STATE OF NORTH CAROLINA v. CHRISTOPHER SCOTT ROBINSON

No. COA00-1247

(Filed 5 February 2002)

**1. Search and Seizure— search by parole officer—not in lieu of search warrant**

The trial court did not err by denying a defendant's motion to suppress marijuana eventually found after a parole officer attempted to gain entry into defendant's house pursuant to a parole condition allowing warrantless searches where defendant contended that the use of the parole officer's authority was in lieu of police officers obtaining a search warrant and was not in furtherance of the supervisory goals of probation. The fact that other police officers were in the area of defendant's home when the parole officer approached defendant did not affect the legality of the parole officer's conduct, and the Fourth Amendment does not limit searches pursuant to probation conditions to those searches that have a probationary purpose.

STATE v. ROBINSON

[148 N.C. App. 422 (2002)]

**2. Search and Seizure— unlawful warrantless entry—subsequent warrant—independent source doctrine**

Assuming that a warrantless entry by officers into defendant's home was not justified by exigent circumstances and was unlawful, evidence thereafter seized from the home pursuant to a subsequently obtained search warrant was admissible under the independent source doctrine where the search warrant was obtained on the basis of an informant's tip that defendant was growing marijuana in his home, corroborating evidence was obtained while officers were lawfully on the premises attempting to gain consent to search, and defendant refused to consent to a search; the warrant application contained no information concerning what the officers observed when they initially entered the home without a warrant; and there was no indication that the warrant was prompted by what the officers saw during the warrantless entry.

**3. Search and Seizure— warrant—probable cause—corroboration of tip**

A detective's affidavit provided a sufficient showing of probable cause to support issuance of a search warrant where an informant's anonymous tip was not reliable standing alone, but the information in the tip was sufficiently corroborated to provide reasonable cause to believe that a search of defendant's house would reveal marijuana.

**4. Appeal and Error— appointment of counsel refused—no prejudicial error**

There was no prejudicial error in a marijuana prosecution where the court refused to appoint appellate counsel without making findings and conclusions regarding defendant's financial status but defendant's counsel took all of the necessary steps to docket defendant's appeal and filed a brief on defendant's behalf. The denial of defendant's request for appointed counsel was not prejudicial to defendant's right to counsel.

Appeal by defendant from judgment entered 18 May 2000 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 8 October 2001.

STATE v. ROBINSON

[148 N.C. App. 422 (2002)]

*Attorney General Roy Cooper, by Assistant Attorney General Michael C. Warren, for the State.*

*Kristoff Law Offices, P.A., by Sharon H. Kristoff, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted for maintaining a dwelling for keeping and selling controlled substances, manufacturing marijuana, and possession with the intent to manufacture, sell or deliver marijuana. Defendant filed a motion to suppress evidence seized from his home pursuant to a search conducted on 8 September 1999. Defendant argued that the officers entered his house without a warrant, without probable cause, and in the absence of exigent circumstances, and that the subsequently obtained search warrant was not supported by probable cause. The trial court denied Defendant's motion to suppress and signed an order to that effect on 18 May 2000. This original order was misplaced and the trial court entered an exact copy of the original on 15 September 2000 *nunc pro tunc* 18 May 2000. Subsequent to the denial of his motion to suppress, Defendant pled guilty to manufacturing marijuana and maintaining a dwelling for keeping and selling controlled substances. Defendant received a suspended prison sentence with supervised probation for three years. From the denial of his motion to suppress, Defendant appeals pursuant to N.C. Gen. Stat. § 15A-979(b).

The facts pertinent to this appeal are as follows: On 31 August 1999, Captain Mardy Benson ("Captain Benson") of the Johnston County Sheriff's Department received an anonymous tip advising that the informant had been present at a store and overheard a conversation concerning Christopher Robinson ("Robinson," or "Defendant") and a marijuana growing operation located in the bedrooms of Robinson's house. Specifically, the anonymous informant overheard that Robinson was on probation, that Robinson's probation officer had come by Robinson's house, and that Robinson could not believe his probation officer had not seen the grow lights or smelled the marijuana. The informant further overheard that someone was coming by Robinson's house to pick up some marijuana that had been harvested from the plants growing in the house, that the marijuana growing operation was a hydroponic system, and that Robinson's wife's name was Terrell. The informant also advised Captain Benson that she did not know Robinson.

STATE v. ROBINSON

[148 N.C. App. 422 (2002)]

Captain Benson informed Agent A.W. Bryan ("Agent Bryan"), a detective on the Johnston County Interagency Drug Task Force, of the details of this anonymous tip. Agent Bryan recognized the name Christopher Robinson and, upon investigation, discovered that she had arrested Christopher Robinson on 15 May 1998 and charged him with maintaining a place to keep controlled substances, possession with intent to manufacture, sell and deliver marijuana, and manufacturing marijuana. This earlier arrest of Robinson was the result of a consensual search of Robinson's residence, which led to the discovery of approximately ten marijuana plants in various stages of growth and cultivation, grow lamps, a bag containing approximately 0.2 grams of marijuana, and other paraphernalia commonly used in the indoor cultivation and manufacture of marijuana. This growing operation was primarily located in the bedroom closet of Robinson's then residence.

After receiving the information from the anonymous tip, Agent Bryan contacted the Johnston County Probation Parole Office and spoke with Officer Stephen Wood ("Officer Wood"), who informed Agent Bryan that Robinson was still on probation from this earlier drug offense, and as a special condition of his probation, Robinson had agreed to submit to warrantless searches of his person and residence. Agent Bryan and Officer Wood discussed setting up a date and time at which to attempt to conduct a warrantless search of Robinson's house pursuant to his probation.

On 7 September 1999, Agent Bryan and Officer Wood decided that they would go to Robinson's house the following night. Officer Wood would attempt to gain consent to search the house, and if Robinson refused to consent, he would be arrested for a probation violation. Agent Bryan and other officers of the Interagency Drug Task Force planned to be at a prearranged location in the general area of Robinson's house in case Officer Wood needed some assistance.

On 8 September 1999, Officer Wood and Probation Officer Jansen Lee ("Officer Lee") went to Robinson's house, located at 3388 U.S. 301 South, to attempt to gain consent to search. When the officers arrived, Robinson stepped off the front porch and met them in front of the house. Officer Wood asked Robinson for consent to search the house. After conferring with Terrell Allen ("Allen"), who the record indicates is Robinson's girlfriend and not his wife, and who had joined Robinson and the officers outside, Robinson refused to grant consent for a search. Officer Wood explained to Robinson that his refusal to consent was a violation of his probation and that he was

going to be arrested. Robinson replied, "Okay. You can arrest me." Robinson was arrested and taken to Johnston County Jail. Agent Bryan, stationed at the prearranged location with other agents of the Drug Task Force, was notified of Robinson's arrest.

At that point, Agent Bryan and the other officers decided to go to the house themselves to attempt to obtain consent to search from Allen, who they knew to be there based on Officer Wood's earlier encounter with her. Lieutenant Daughtry and Special Agent Parrish knocked on the front door and identified themselves. Agent Bryan remained stationed near her car, which was parked at the front of the driveway, approximately ten feet from the house. The driveway ran along the right side of the house, placing Agent Bryan and her car in close proximity to an air-conditioning unit which was located on the ground immediately beside the house. Lieutenant Daughtry and Agent Parrish received no response in their repeated attempts to get someone to come to the door. Meanwhile, from her location approximately three to five feet from a window of the house, Agent Bryan observed movement inside the house. Lieutenant Daughtry and Agent Parrish then joined Agent Bryan at her location on the right side of the house. From this location, the officers smelled a strong odor of marijuana emanating from the house, in and around the vicinity of the air-conditioning unit.

The officers then decided to return to their prearranged location to meet with other agents and decide how to proceed. Upon their return to the prearranged location, Lieutenant Daughtry decided to call the house to talk with Allen in another attempt to gain consent to search. Lieutenant Daughtry spoke with Allen over the phone and Allen refused to grant consent. Allen also told Lieutenant Daughtry that she wanted to contact her lawyer.

At this time, the officers called District Attorney Tom Lock to explain the situation and make sure there were sufficient exigent circumstances present to allow the officers to enter the house without a warrant in order to secure the premises and prevent the destruction of any evidence. District Attorney Lock told the officers that they could enter the house without a warrant, and the officers returned to the house to do so.

After another unsuccessful attempt to get a response from knocking on the front door, the officers broke into the house. Once inside, the officers restrained Allen and conducted a protective sweep of the house to search for any other inhabitants and secure the premises

STATE v. ROBINSON

[148 N.C. App. 422 (2002)]

and any evidence that could possibly be destroyed. Agent Bryan then went back to her office and prepared the search warrant application that was submitted to the magistrate.

As part of the search warrant application, Agent Bryan swore to the following: (1) Robinson's previous arrest on drug charges and the evidence that was discovered upon searching Robinson's house in connection with this previous arrest; (2) the anonymous tip received by Captain Benson concerning Robinson and a marijuana growing operation; (3) Agent Bryan's confirmation through Officer Wood that Robinson was in fact on probation; (4) Robinson's refusal to consent to a search of the house; (5) Robinson's subsequent arrest for a probation violation for refusing to consent; (6) the subsequent unsuccessful attempt to secure consent to search from Allen; (7) Agent Bryan's observation of movement inside the house; and (8) the officers' detection of the odor of marijuana emanating from the house. Based on these facts and her law enforcement experience, Agent Bryan gave her opinion that probable cause was present to believe that marijuana, drug paraphernalia, and other indicia of drug activity were present in and around Robinson's house. The magistrate issued the search warrant and the officers returned to Robinson's house to conduct the search. The officers' search resulted in the seizure of marijuana, marijuana cultivation paraphernalia, and a .12-gauge shotgun.

Defendant brings forward numerous assignments of error which present three arguments against the trial court's denial of Defendant's motion to suppress. Defendant also assigns error to the trial court's failure to appoint counsel to perfect his appeal. After a careful review of the record, briefs, and transcript, we affirm the trial court's denial of Defendant's motion to suppress.

"Upon a voir dire hearing pursuant to a motion to suppress evidence, the trial court's findings of fact, if supported by competent evidence, are conclusive and binding on the appellate courts. The conclusions drawn from the facts found are, however, reviewable." *State v. Wallace*, 111 N.C. App. 581, 584, 433 S.E.2d 238, 240 (1993).

[1] Defendant first contends that the trial court erred in not granting his motion to suppress on the ground that the law enforcement officers unlawfully attempted to have a probation officer conduct a warrantless search of Defendant's residence as part of their criminal investigation, and not as part of the probation supervision process. Defendant's argument has no merit.

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *United States v. Knights*, —— U.S. ——, ——, —— L. Ed. 2d ——, —— (No. 00-1260, filed 10 December 2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414 (1999)). Defendant's status as a probationer subject to a search condition bears on both sides of that balance. "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.* In the instant case, as a special condition of probation for his previous drug conviction, Defendant was required to "[s]ubmit at reasonable times to warrantless searches by a probation officer of his person and of his vehicle and premises while he is present, for purposes specified by the court and reasonably related to his probation supervision . . . ." N.C. Gen. Stat. § 15A-1343(b1)(7) (1999). This probation condition significantly diminished Defendant's reasonable expectation of privacy.

"In assessing the governmental interest side of the balance, it must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.' " *Knights*, —— U.S. at ——, —— L. Ed. 2d at —— (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 880, 97 L. Ed. 2d 709, 721 (1987)). Accordingly, the State's "interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." *Id.*

Nonetheless, Defendant contends that Agent Bryan used Officer Wood's authority to search Defendant in lieu of obtaining a search warrant, thereby resulting in an attempt by Officer Wood to gain consent to search Defendant's house which was not in furtherance of the supervisory goals of probation, and was therefore unreasonable under the Fourth Amendment. The record shows that after receiving an anonymous tip indicating that Defendant was growing marijuana in his house, Agent Bryan provided that information to Officer Wood, who was Defendant's probation officer as a result of an earlier offense likewise involving the indoor cultivation of marijuana. This information indicated to Officer Wood that Defendant was in violation of his probation. It clearly furthered the supervisory goals of pro-

bation for Agent Bryan to forward this information to Officer Wood, and for Officer Wood to attempt to investigate this information further by seeking Defendant's consent to a search of the house. The fact that Agent Bryan and other officers were in the general area of Defendant's home when Officer Wood approached him about consenting to a search does not affect the legality of Officer Wood's conduct. *See State v. Church*, 110 N.C. App. 569, 576, 430 S.E.2d 462, 466 (1993) ("the presence and participation of police officers in a search conducted by a probation officer, pursuant to a condition of probation, does not, standing alone, render the search invalid"). Further, in *Knights*, the United States Supreme Court recently held that a law enforcement officer's search of a probationer subject to a search condition does not violate the Fourth Amendment when the law enforcement officer has reasonable suspicion that the probationer is engaged in criminal activity. *Knights*, —— U.S. at ——, —— L. Ed. 2d at ——. Thus, the Fourth Amendment does not limit searches pursuant to probation conditions to those searches that have a "probationary purpose." *Id.* Accordingly, we overrule Defendant's first assignment of error.

[2] Next, Defendant argues that the trial court erred in its conclusion that the officers' warrantless entry into Defendant's home was justified by exigent circumstances. Assuming, *arguendo*, that the officers' warrantless entry into Defendant's home was not justified by exigent circumstances, the evidence later seized as a result of the subsequently obtained search warrant is nevertheless admissible under the independent source doctrine.

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search." *Wallace*, 111 N.C. App. at 589, 433 S.E.2d at 243 (citing *Murray v. United States*, 487 U.S. 533, 101 L. Ed. 2d 472 (1988)). However, evidence is not to be excluded if the connection between the unlawful search and the discovery and seizure of the evidence is so attenuated as to dissipate the taint, as where the police had an independent source for discovery of the evidence. *Id.* "The independent source doctrine permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from lawful activities untainted by the initial illegality." *Id.* However, "[a]ny search pursuant to a warrant is not a genuinely independent source of information sufficient to remove the taint of an earlier unlawful entry if the warrant was either prompted by what officers saw in the initial unlawful entry, or if the information obtained during the entry

was presented to the Magistrate and affected his decision to issue the search warrant." *Id.* at 590, 433 S.E.2d at 243.

In applying the independent source doctrine in *Segura v. United States*, 468 U.S. 796, 82 L. Ed. 2d 599 (1984), the United States Supreme Court held that a search warrant was valid where the information used to obtain the search warrant was not derived from an initial unlawful entry, but rather came from sources wholly unconnected with the unlawful entry and was known to the agents well before the initial unlawful entry. Thus, the dispositive question is whether the search warrant in the case *sub judice* was based on, or prompted by, information obtained from the officers' warrantless entry, or was it based on information acquired independently of the warrantless entry so as to purge the search warrant of the primary taint.

In the instant case, the officers had acquired information from an anonymous informant and decided to investigate further. Upon investigation, the officers corroborated some of the information provided by the informant. The officers attempted to gain consent to search Defendant's house, but were denied. While attempting to gain consent, the officers discovered further evidence corroborating the informant's tip. The officers then entered the home to secure it and any evidence it might contain, and then went to apply for a search warrant. In the search warrant application, the affiant referenced as grounds for probable cause (1) the informant's tip, (2) Defendant's refusal to consent to a search of the house, and (3) and the corroborating evidence, including the strong odor of marijuana, obtained while legally on Defendant's property attempting to gain consent to search. The warrant application contained no information concerning what the officers observed when they initially entered the house without a warrant. Nor is there any indication that the search warrant application was prompted by what the officers saw in the warrantless entry. Thus, the search warrant was not tainted by the officers' warrantless entry. Accordingly, Defendant's second assignment of error is overruled.

[3] Defendant further contends that the trial court erred in concluding that Agent Bryan's affidavit provided a sufficient showing of probable cause to support the magistrate's issuance of the search warrant. We disagree.

In determining whether probable cause exists for the issuance of a search warrant, the "totality of the circumstances" test enunciated

in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983), is to be applied. *State v. Beam*, 325 N.C. 217, 381 S.E.2d 327 (1989); *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984); *State v. Witherspoon*, 110 N.C. App. 413, 429 S.E.2d 783 (1993). The "totality of the circumstances" test has been described as follows:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.[citation omitted].

*Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548 [1983]). "The affidavit is sufficient if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." *Id.* at 636, 319 S.E.2d at 256. Under the "totality of the circumstances" test, the dispositive question is "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." *Beam*, 325 N.C. at 221, 381 S.E.2d at 329.

In the instant case, the magistrate had before him the following information: (1) that Defendant had previously been arrested on marijuana-related charges after a search of his residence revealed the presence of marijuana and paraphernalia used in the indoor cultivation of marijuana; (2) that Defendant was still on probation for this previous violation of the Controlled Substances Act; (3) that the affiant had received information that Defendant was again growing marijuana in his residence and that an individual was coming by the house to pick up some marijuana that had been harvested from the plants in the house; (4) that Defendant refused to allow his probation officer to conduct a warrantless search of his residence pursuant to the terms of Defendant's probation; (5) that Defendant's girlfriend also refused to consent to a search of the residence; (6) that while unsuccessfully attempting to get Defendant's girlfriend to respond to their knocks on the front door of the residence, the officers observed movement inside the house; and (7) that the officers smelled a strong odor of marijuana emanating from the house.

The magistrate was presented with a sworn affidavit signed by Agent Bryan. Agent Bryan's affidavit stated that Captain Benson had been informed by an anonymous informant that Defendant was growing marijuana in his house. "The police officer making the affidavit may do so in reliance upon information reported to him by other officers in the performance of their duties." *State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971). Agent Bryan's affidavit reflected that the anonymous tip was based on a conversation overheard by the informant concerning Defendant and Defendant's marijuana growing operation. The informant provided the following details of this conversation: (1) where in the house the marijuana was being grown (two bedrooms), (2) that Defendant was currently on probation, (3) that an exchange of harvested marijuana was planned, and (4) that the marijuana growing operation was a hydroponic system. However, the affidavit does not contain any information as to when the informant overheard the conversation involving Defendant, when the planned exchange of marijuana was to take place, or where Defendant's residence was actually located. Further, the anonymous informant advised that she did not know Defendant. Agent Bryan's affidavit also lacks any statement that the informant had provided law enforcement officers with accurate and useable information in the past. Therefore, the anonymous informant's tip does not contain sufficient evidence of reliability to make it, standing alone, sufficient to support the magistrate's probable cause determination.

However, Agent Bryan's affidavit contains several pieces of information that tend to corroborate the informant's anonymous tip. First, Agent Bryan's investigation revealed that Defendant was in fact on probation at the time. Second, both Defendant and Defendant's girlfriend refused to grant consent to law enforcement officers to conduct a search of the house, further corroborating the likelihood that contraband of some kind may be present in the house. Third, the affiant observed movement inside the house while the other officers were knocking on the front door in an unsuccessful attempt to gain consent to search. Finally, the affiant and the other officers smelled a strong odor of marijuana emanating from the house.

Defendant contends that the information concerning movement inside the house and the odor of marijuana emanating from the house cannot be considered in determining whether the search warrant was supported by probable cause because that information itself was obtained pursuant to an illegal search. While Defendant concedes that the officers were entitled to go to the front door of Defendant's

house for the purpose of a general inquiry or interview, *see State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 599-600 (1979), Defendant argues that the officers were not allowed to look around the yard and into the windows of the house. The legal questions are whether Agent Bryan had a right to be on the right side of the house when she looked through the window and observed movement inside the house, and whether all three officers had a right to be in the vicinity of the air-conditioning unit when they smelled the odor of marijuana.

The record reveals that Agent Bryan remained stationed near her car when the other officers approached the front door of Defendant's house. Agent Bryan's car was located in the driveway on the right side of the house, approximately ten feet away from the house. If the officers were entitled to enter Defendant's driveway and go to the front door, which is undisputed, there is nothing unlawful or unreasonable about Agent Bryan remaining in close proximity to her car approximately five feet from the house while the other two officers knocked on the front door. From this location, Agent Bryan observed movement inside the house. Agent Bryan then alerted the other two officers and they came over to her location on the right side of the house. The record then shows that the officers smelled marijuana emanating from the house in the general vicinity of the air-conditioning unit. The air-conditioning unit was located on the right side of the house approximately ten feet from Agent Bryan's car, which was legally parked in the driveway. Based on this record, we conclude that the officers had a right to be where they were when they observed the movement in the house and when they smelled the marijuana odor. Thus, this information was properly included in the search warrant application affidavit.

Upon the totality of the circumstances presented, we conclude the magistrate in the instant case had ample basis upon which to find probable cause to authorize a search of Defendant's residence. Although the informant's tip was not reliable standing alone, the information contained in the tip was sufficiently·corroborated to provide reasonable cause to believe that a search of Defendant's house would reveal the presence of marijuana. Consistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, reviewing courts should not have a negative attitude toward warrants and "should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236, 76 L. Ed. 2d 527, 547 (1983)

(quoting *United States v. Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689 (1965)); *see also State v. Riggs*, 328 N.C. 213, 222, 400 S.E.2d 429, 434 (1991). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237 n.10, 76 L. Ed. 2d at 547 n.10 (quoting same). In light of the Fourth Amendment's strong preference for searches pursuant to warrants, we agree with the magistrate's probable cause determination in the case *sub judice*.

**[4]** Finally, Defendant contends that the trial court erred in denying court-appointed counsel to perfect his appeal. We conclude that any such error by the trial court was not prejudicial to Defendant.

The record discloses that Sharon Kristoff ("Ms. Kristoff"), Defendant's attorney on appeal, was appointed to represent Defendant on 21 October 1999. Ms. Kristoff represented Defendant at the suppression hearing and his plea hearing. Following the trial court's sentencing of Defendant pursuant to his guilty plea, Ms. Kristoff gave oral notice of appeal from the trial court's denial of Defendant's motion to suppress. The trial court indicated that it would not sign the appellate entries appointing Ms. Kristoff to perfect Defendant's appeal until Defendant filled out a new affidavit of indigency. This request by the trial court was permitted under N.C. Gen. Stat. § 7A-450, which provides: "[t]he question of indigency may be determined or redetermined by the court at any stage of the action or proceeding at which an indigent is entitled to representation." N.C.G.S. § 7A-450(c) (1999). The trial court subsequently denied court-appointed counsel to perfect Defendant's appeal.

Defendant argues that the trial court committed plain error in denying his request for appointed counsel on appeal without citing to the affidavit of indigency or making findings of fact or conclusions of law regarding Defendant's financial status. In support of this contention, Defendant relies on *State v. Haire*, 19 N.C. App. 89, 198 S.E.2d 31 (1973), in which this Court held that the denial of counsel without evidence to support a finding of non-indigency entitled the defendant to a new trial. However, the facts of the case *sub judice* are readily distinguishable from those in *Haire*. In *Haire*, the defendant requested the appointment of counsel at the outset of jury selection. The court denied the defendant's request at that time and later made an inquiry into the defendant's financial status after the jury was selected. After this inquiry, the court entered an order denying the defendant's request for counsel, and the defendant was not represented at trial.

In the instant case, the record discloses that Defendant was represented by counsel at the suppression hearing and during the entry of his guilty plea. After the trial court refused to appoint counsel to perfect Defendant's appeal, Ms. Kristoff filed written notice of appeal on Defendant's behalf. Ms. Kristoff then took all the necessary steps to docket Defendant's appeal with this Court and followed that with the filing of a brief on Defendant's behalf. Unlike the defendant in *Haire*, we conclude that Defendant here has received adequate representation at all stages, including the suppression hearing, his plea hearing, and his appeal to this Court. Therefore, any error committed by the trial court in failing to make findings of fact and conclusions of law to support its denial of Defendant's request for appointed counsel on appeal was in no way prejudicial to Defendant's right to counsel. Therefore, Defendant's final assignment of error is overruled. However, we reiterate that N.C.G.S. § 7A-450(c) provides that "[t]he question of indigency may be determined or redetermined by the court at any stage of the action or proceeding at which an indigent is entitled to representation."

Defendant's arguments attacking the denial of his motion to suppress fail, and we affirm the trial court's judgment.

Affirmed.

Chief Judge EAGLES and Judge HUDSON concur.