BEASLEY, Justice.
*680 The issue before us in this case is whether N.C.G.S. § 20-16.2(b), which authorizes law enforcement to obtain a blood sample from an unconscious defendant who is suspected of driving while impaired without first obtaining a search warrant, was unconstitutionally applied to defendant. The trial court suppressed the results of defendant’s blood test on Fourth Amendment grounds,- and the Court of Appeals affirmed that decision. We now affirm the opinion of the Court of Appeals as modified herein.
On 6 October 2014, defendant was indicted for felony habitual driving while impaired and driving while his license was revoked. These charges were based on events that occurred on 17 February 2014. On 26 January 2015, defendant filed a pretrial motion to suppress all evidence gathered after his arrest. The motion was heard on 2 and 3 February 2015.
Based on the evidence presented at the suppression hearing, the trial court found the following facts. On 17 February 2014, Officer Tammy Bryson responded to a dispatch indicating that a white male wearing his sweater backwards and carrying a liquor bottle had stopped his SUV in the travel portion of a public road, gotten out of the vehicle, and stumbled across the multilane highway. Officer Bryson found Joseph Romano (defendant), who matched the description of the driver, sitting behind a restaurant “approximately 400 feet from the abandoned SUV.” Officer Bryson observed that defendant was making incoherent statements, that his speech was slurred, that he was unable to stand due to his obvious intoxication, and that he smelled strongly of alcohol and vomit. Officer Biyson determined that defendant’s faculties were appreciably impaired. Defendant was arrested for driving while impaired (DWI), and, due to his extreme level of intoxication, defendant was transported to a hospital for medical treatment. Officer Bryson requested the assistance of Sergeant Ann Fowler, a Drug Recognition Expert.
Defendant was belligerent and combative throughout his encounters with law enforcement and medical personnel. At the hospital, medical staff and law enforcement attempted to restrain defendant. Medical personnel determined it was necessary to medicate defendant to calm him down. Sergeant Fowler told the treating nurse “that she would likely need a blood draw for law enforcement purposes.” Before defendant was medicated, Sergeant Fowler did not “advise[ ] [him] of his chemical analysis rights,” “request[ ] that he submit[ ] to a blood draw,” or obtain a warrant for a blood search. After defendant was medically subdued, the treating nurse drew blood for medical treatment purposes; however, the nurse drew more blood than was needed for treatment *681 purposes and' offered the additional blood for law enforcement use. Before accepting the blood sample, Sergeant Fowler attempted to get defendant’s consent to the blood draw or receipt of the evidence, but she was unable to wake him. The trial, court found as fact that “[d]ue to his medically induced state, the Defendant was rendered unable to meaningfully receive and consider his blood test rights, unable to give or withhold his informed consent, and/or unable to exercise his right to refuse the warrantless test.”
During this entire series of events, multiple officers were present to assist with the investigation, “such that an officer could have left to drive the relatively short distance (only a few miles) to the Buncombe County Magistrate’s Office to obtain a search warrant.” Sergeant Fowler was familiar with the blood search warrant procedure, and search warrants for a blood draw are fill-in-the-blank forms that are not time-consuming; moreover, magistrates were on duty and available during the relevant time period. Sergeant Fowler did not attempt to obtain a warrant for defendant’s blood nor did she believe any exigency existed. Instead, she “expressly relied upon the statutoiy authorization set forth in [subsection] 20-16.2(b),” which allows the taking and testing of blood from a person who has committed a DWI if the person is “unconscious or otherwise in a condition that makes the person incapable of refusal.” After taking possession of defendant’s blood, Sergeant Fowler “drove to the Buncombe County Magistrate’s Office and swore out warrants for the present charges,” and then returned to the hospital and served the warrants on defendant. The trial court found that “nothing prevented] her from obtaining a search warrant [for defendant’s blood] at the same time she [obtained the other warrants] and then subsequently seizing the blood.”
The trial court quoted Missouri v. McNeely, 569 U.S. _, 133 S. Ct. 1552 (2013), which states that “a warrantless search of the person is reasonable only if it falls within a recognized exception,” such as “when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.” Id. at _, 133 S. Ct. at 1558 (citations omitted). A court “looks to the totality of circumstances” to determine whether exigent circumstances justified law enforcement in acting without a warrant. Id. at _, 133 S. Ct. at 1559 (citations omitted).
The trial court concluded as a matter of law that the seizure of defendant’s blood “was a search subject to Fourth Amendment protection,” and, under “a totality of the circumstances test, no exigency existed justifying a warrantless search.” The court concluded that N.C.G.S. *682 § 2046.2(b) “creates a per se exigency exception to the warrant requirement,” and as applied here violates the holding in McNeely. Therefore, “any subsequent testing performed by law enforcement on the seized blood must be suppressed.”
At the conclusion of the hearing on 3 February 2015, the court ruled orally on defendant’s motions to suppress. The court then filed written orders on 23 March 2015.[1] The State timely appealed the trial court’s order suppressing the blood test results.
The Court of Appeals affirmed the trial court’s order suppressing the test results of the blood that Sergeant Fowler obtained from defendant at the hospital. State v. Romano, _ N.C. App. _, _, 785 S.E.2d 168, 175 (2016). The court quoted McNeely’s holding that “ ‘the natural metabolization of alcohol in the bloodstream’ does not present a ‘per se exigency that justifies an exception to the Fourth Amendment’s warrant requirement for nonconsensual blood testing in all drunk-driving cases.’ ” Id. at_, 785 S.E.2d at 173 (quoting McNeely, 569 U.S. at _, 133 S. Ct. at 1556). The Court of Appeals determined that N.C.G.S. § 2046.2(b) could not justify a warrantless blood draw from an unconscious DWI defendant because McNeely “sharply prohibits per se warrant exceptions for blood draw searches.” Id. at , 785 S.E.2d at 174.
Applying N.C.G.S. § 2046.2(b) to the instant case, the Court of Appeals opined that “the record suggests, but does not affirmatively show, that [Sergeant] Fowler had ‘reasonable grounds’ to believe Defendant. . . was intoxicated while he drove his SUV,” as opposed to his becoming intoxicated while drinking rum after leaving his vehicle. Id. at_, 785 S.E.2d at 174. The court added: “More importantly, Fowler testified that she did not attempt to obtain a search warrant at any time, even though the magistrate’s office was ‘a couple of miles’ away from the hospital.” Id. at_, 785 S.E.2d at 174. The court concluded that
[t]he State’sposi hoc actions do not overcome the presumption that the warrantless search is unreasonable, and it offends the Fourth Amendment, the State Constitution, and McNeely. As the party seeking the warrant exception, the State did not carry its burden in proving “the exigencies of the situation made that [warrantless] course *683 imperative.” Coolidge [v. New Hampshire], 403 U.S. [443,] 455, 91 S.[ ]Ct. 2022[, 2032 (1971)]. Under the totality of the circumstances, considering the alleged exigencies of the situation, the warrantless blood draw was not objectively reasonable. See McNeely, _ U.S. at _, 133 S.[ ]Ct. at 1558.
Romano, _ N.C. App at __, 785 S.E.2d at 174 (second alteration in original).
The Court of Appeals also concluded that neither the independent source doctrine nor the good faith exception to the warrant requirement applied in this case. Id. at _, 785 S.E.2d at 174-75. The court first recognized that the State raised these arguments for the first time on appeal. Then, the court noted that under a previous Court of Appeals decision, “[t]he independent source doctrine permits the introduction of evidence initially discovered [during], or as a consequence of, an unlawful search, but later obtained independently from lawful activities untainted by the initial illegality.” Id. at _, 785 S.E.2d at 174 (quoting State v. Robinson, 148 N.C. App. 422, 429, 560 S.E.2d 154, 159 (2002)). The court determined that “[t]he sequence of events in this case does not follow this framework,” in that the attending nurse knew that defendant was going to be arrested for DWI and that officers wanted his blood drawn. Id. at _, 785 S.E.2d at 174. As such, the court concluded that “the muse cannot be an independent lawful source.” Id. at __, 785 S.E.2d at 174. Additionally, the Court of Appeals concluded that “[t]he good faith exception,” which “allows police officers to objectively and reasonably rely on a magistrate’s warrant that is later found to be invalid,” id. at _, 785 S.E.2d at 174 (citation omitted), was not applicable in this situation because “the officers never attempted to obtain a search warrant prior to the blood draw,” id. at __, 785 S.E.2d at 175. Thus, the officers could not “objectively and reasonably rely on the good faith exception.” Id. at _, 785 S.E.2d at 175.
Both parties sought review of the Court of Appeals’ decision. This Court allowed both petitions for discretionary review on 18 August 2016.
After the parties filed their petitions for discretionary review but before they filed their briefs with this Court, the Supreme Court of the United States decided Birchfield v. North Dakota, 579 U.S. _, 136 S. Ct. 2160 (2016). After we granted review, in their briefs and oral arguments to this Court, both parties acknowledged that the Birchfield decision challenges the constitutionality of N.C.G.S. § 20-16.2(b). Both in its brief and oral argument before this Court, the State recognized that *684 Birchfield, suggests that N.C.G.S. § 20-16.2(b) is unconstitutional. The State noted the differences between Birchfield and this case, but during oral argument stated that it could not read Birchfield to suggest anything other than that subsection 20-16.2(b) was unconstitutional. Defendant argued that subsection 2046.2(b) was unconstitutional as applied to him because it created a per se exception to the warrant requirement in violation of McNeely and now also Birchfield. Defendant asserted that under McNeely and Birchfield both exigency and valid consent must be determined by a totality of the circumstances. Defendant argued that N.C.G.S. § 2046.2(b) could only be constitutional if it could be read as allowing a blood draw from unconscious persons so long as the officer also complied with the Fourth Amendment.
The State also argued that the Court of Appeals’ analyses of probable cause, state action, the independent source doctrine, and the good faith exception were incorrect and asked this Court to reverse or modify the Court of Appeals’ opinion on those issues. Defendant argued that the State was procedurally barred from raising a state action, good faith, or independent source claim because these claims were not presented to the trial court.
We now address the application of the Supreme Court’s decisions in Birchfield v. North Dakota and Missouri v. McNeely to the situation at bar, specifically, the warrantless blood draw from defendant for purposes of determining blood alcohol content. We hold that, in light of Birchfield and McNeely, N.C.G.S. § 2046.2(b) is unconstitutional as applied to defendant because it permitted a warrantless search that violates the Fourth Amendment.[2] We also hold that the State’s state action, good faith, and independent source claims are not properly before us.
Appellate courts review a trial court’s denial of a motion to suppress to determine whether the trial court’s findings of fact are supported by competent evidence, in which event they are conclusively binding on *685 appeal, and whether the findings of fact support the trial court’s conclusions of law. State v. Brooks, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994) (citations omitted). Conclusions of law “are fully reviewable on appeal.” Id. at 141, 446 S.E.2d at 585 (quoting State v. Mahaley, 332 N.C. 583, 592-93, 423 S.E.2d 58, 64 (1992), cert, denied, 513 U.S. 1089, 115 S. Ct. 749 (1995)). Whether a statute is constitutional is a question of law that this Court reviews de novo. We review the decision of the Court of Appeals for any errors of law. Id. at 149, 446 S.E.2d at 590 (citations omitted).
The Fourth Amendment to the United States Constitution and Article I of the North Carolina Constitution protect the rights of people to be secure from unreasonable searches and seizures. U.S. Const, amend. IV; N.C. Const, art. I, § 20. Our courts have held that drawing blood from a person constitutes a search under both the Federal and North Carolina Constitutions. Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826 (1966); State v. Carter, 322 N.C. 709, 370 S.E.2d 553 (1988). A warrantless search of a person is per se unreasonable unless it falls within a recognized exception to the warrant requirement. McNeely, 569 U.S. at _, 133 S. Ct. at 1558; see also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971).
In this case Sergeant Fowler took possession of defendant’s blood from the treating nurse while defendant was unconscious without first obtaining a warrant in reliance on N.C.G.S. § 20-16.2(b). Subsection 20-16.2(b) states:
(b) Unconscious Person May Be Tested. - If a law enforcement officer has reasonable grounds to believe that a person has committed an implied-consent offense, and the person is unconscious or otherwise in a condition that makes the person incapable of refusal, the law enforcement officer may direct the taking of a blood sample or may direct the administration of any other chemical analysis that may be effectively performed. In this instance the notification of rights set out in subsection (a) and the request required by subsection (c) are not necessary.
N.C.G.S. § 2046.2(b) (2016). Thus, we must determine whether this war-rantless search violated the Fourth Amendment. This Court has never before addressed the constitutionality of N.C.G.S. § 2046.2(b). This issue was raised, but not thoroughly discussed, in the Court of Appeals opinion in State v. Hollingsworth, 77 N.C. App. 36, 334 S.E.2d 463 (1985). In that case the Court of Appeals considered the application of *686 the warrantless search exception permitted by N.C.G.S. § 20-16.2(b) but ultimately relied on Cupp v. Murphy, 412 U.S. 291, 93 S. Ct. 2000 (1973), and Schmerber, 384 U.S. 757, 86 S. Ct. 1826, to affirm the constitutionality of the officer’s search and seizure in that case.[3]
In Hollingsworth a blood sample was taken from the defendant while he was unconscious at the hospital. The State argued that the defendant “gave implied consent to the blood test by operation of the ‘implied consent’ statute,” N.C.G.S. § 20-16.2. 77 N.C. App. at 40, 334 S.E.2d at 466 (internal citation omitted). The Court of Appeals observed that “[N.C.JG.S. § 20-16.2 operates to imply consent by an unconscious driver to a blood alcohol test.” Id. at 41, 334 S.E.2d at 467. The Court of Appeals, however, did not analyze whether the blood draw from the unconscious defendant was constitutional based upon an implied-consent rationale. Id. at 41-42, 334 S.E.2d at 467. Instead, the court held that the officer’s actions did not violate the Fourth Amendment because a blood draw is only slightly intrusive, and probable cause and exigent circumstances existed, which permitted the officers to draw the defendant’s blood without a warrant.[4] Id. at 44-45, 334 S.E.2d at 468-69. As to the exigency of destructibility of the evidence, the Court of Appeals relied on Schmerber in determining that “the body’s breakdown of alcohol in the blood creates the reasonable risk that the evidence of intoxication will quickly be destroyed.” Id. at 44, 334 S.E.2d at 468 (citing Schmerber, 384 U.S. 757, 86 S. Ct. 1826).[5]
*687 In Schmerber v. California the Supreme Court of the United States upheld a warrantless blood test of an individual arrested for driving under the influence of alcohol because the officer “might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened ‘the destruction of evidence.’ ” 384 U.S. at 770, 86 S. Ct. at 1835 (quoting Preston v. United States, 376 U.S. 364, 367, 84 S. Ct. 881, 883 (1964)). After the Schmerber decision, courts split over “whether the natural dissipation of alcohol in the bloodstream establishes a per se exigency” that justifies a warrantless, nonconsensuai blood test in drunk-driving investigations. See McNeely, 569 U.S. at __, 133 S. Ct. at 1558 & n.2. The Supreme Court settled this issue in Missouri v. McNeely, holding that “the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant,” id. at _, 133 S. Ct. at 1568, and that “[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances,” id. at _, 133 S. Ct. at 1563.[6] Subsection 20-16.2(b), therefore, cannot be constitutionally upheld based on a per se exigency rationale. Here the trial court aptly noted that this case does not involve a situation of exigency.
Though exigency did not reheve Sergeant Fowler of the requirement to obtain a warrant for a blood draw, the State argued that N.C.G.S. § 20-16.2 authorized Sergeant Fowler’s actions because a DWI is an implied-consent offense. “[A] search conducted pursuant to a valid consent is constitutionally permissible.” Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973). Thus, the State argued that by driving on the road, defendant consented to having his blood drawn for a blood test and never withdrew this statutorily implied consent before the blood draw. We must therefore determine whether the warrantless seizure of defendant’s blood pursuant to N.C.G.S. § 20-16.2(b) was constitutional as applied to defendant based on the rationale that the seizure satisfied the consent exception to the warrant requirement.
*688 North Carolina’s Uniform Driver’s License Act states that “[a]ny person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense.”[7] N.C.G.S. § 20-16.2(a) (2016). Impaired driving is an implied-consent offense. Id. § 20-16.2(al) (2016). When a law enforcement officer “has reasonable grounds to believe that the person-charged has committed the implied-consent offense,” the officer “may obtain a chemical analysis of the person.” Id. § 20-16.2(a).
Before the administration of any chemical analysis, the person charged must be informed orally and in writing of the following:
(1) You have been charged with an implied-consent offense. Under the implied-consent law, you can refuse any test, but your drivers license will be revoked for one year and could be revoked for a longer period of time under certain circumstances, and an officer can compel you to be tested under other laws.
(2) [Repealed.]
(3) The test results, or the fact of your refusal, will be admissible in evidence at trial.
(4) Your driving privilege will be revoked immediately for at least 30 days if you refuse any test or the test result is 0.08 or more, 0.04 or more if you were driving *689 a commercial vehicle, or 0.01 or more if you are under the age of 21.
(5) After you are released, you may seek your own test in addition to this test.
(6) You may call an attorney for advice and select a witness to view the testing procedures remaining after the witness arrives, but the testing may not be delayed for these purposes longer than 30 minutes from the time you are notified of these rights. You must take the test at the end of 30 minutes even if you have not contacted an attorney or your witness has not arrived.
Id. “If the person charged willfully refuses to submit to [the] chemical analysis, none may be given under the provisions of this section, but the refusal does not preclude testing under other applicable procedures.” N.C.G.S. § 20-16.2(c) (2016). Under N.C.G.S. § 2046.2(b), a DWI suspect who is unconscious, however, does not have to be given notification of his right to refuse any test or given the opportunity to willfully refuse the test. Id. § 2046.2(b).
In 2016, after this case proceeded through the trial court and the Court of Appeals, and the parties had submitted their petitions for discretionary review to this Court, the Supreme Court of the United States decided Birchfield v. North Dakota. In Birchfield the Supreme Court for the first time addressed the constitutionality of a blood draw under the rationale of statutory implied consent, as well as whether a blood draw can be justified as a search incident to arrest.
The specific issue in Birchjield was “whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream.” 579 U.S. at_, 136 S. Ct. at 2172. The Supreme Court concluded that “the Fourth Amendment permits warrantless breath tests incident to arrest for drunk driving” but does not permit warrant-less blood tests incident to arrest for drunk driving. Id. at , 136 S. Ct. at 2184. Additionally, the Supreme Court concluded “that motorists cannot be deemed to have consented to submit to a blood test [by virtue of an implied-consent statute] on pain of committing a criminal offense.” Id. at_, 136 S. Ct. at 2186.
In Birchfield the Supreme Court first considered whether the war-rantless “search-incident-to-arrest” doctrine applied to breath and blood *690 tests. Using the analysis in Riley v. California, 573 U.S. _, _, 134 S. Ct. 2473, 2484 (2014)—which assessed the degree to which the search intrudes on an individual’s privacy versus the degree to which the search is needed to promote a legitimate governmental interest—the Court determined that a breath test is a permissible search incident to arrest but a blood test is not. Birchfield, 579 U.S. at_, _, 136 S. Ct. at 2176, 2184-85. The Court noted that, unlike breath tests, blood tests require an intrusive piercing of the skin and give law enforcement a sample that can be preserved and from which more than a blood alcohol reading can be determined. Id. at _, 136 S. Ct. at 2178.
After determining that a warrantless blood test could not be justified as a search incident to arrest, the Court turned to whether a blood test is permissible based on a driver’s statutory implied consent to submit to it. The Court noted that its “prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.” Id. at _, 136 S. Ct. at 2185. Nonetheless, “[tjhere must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads,” id. at _, 136 S. Ct. at 2185, and the Court determined that imposing a criminal penalty for refusing to submit to a blood test exceeds such a limit, id. at _, 136 S. Ct. at 2186.
Here N.C.G.S. § 20-16.2(b) does not impose a criminal penalty for refusal to submit to a warrantless blood test; rather, the statute allows police to take blood from an unconscious person suspected of driving while intoxicated on the basis that the person has given implied consent by choosing to drive on public roads. Thus, Birchfield does not answer the specific question before us, namely, whether treating N.C.G.S. § 2046.2(b) as a per se consent exception to the warrant requirement is constitutional under the Fourth Amendment.[8] Though we do not have definitive guidance from the Supreme Court, based on the Supreme Court’s Fourth Amendment precedent regarding consent as well as the rationale and language the Court employed in McNeely and Birchfield, we conclude that the blood draw from defendant cannot be justified *691 under N.C.G.S. § 20-16.2(b) as a per se categorical exception to the warrant requirement.
Treating subsection 20-16.2(b) as an irrevocable rule of implied consent does not comport with the consent exception to the warrant requirement because such treatment does not require an analysis of the voluntariness of consent based on the totality of the circumstances. “[W]hether a consent to a search was in fact ‘voluntary’ ... is a question of fact to be determined from the totality of all the circumstances.” Schneckloth, 412 U.S. at 227, 93 S. Ct. at 2047-48. Further, the State has the burden to prove that “consent was, in fact, freely and voluntarily given.” Id. at 222, 93 S. Ct. at 2045 (quoting Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792 (1968)). Consent is not voluntary if it is “the product of duress or coercion, express or implied.” Id. at 227, 93 S. Ct. at 2048. A court’s decision regarding whether a suspect’s consent was voluntary is based on “a careful scrutiny of all the surrounding circumstances” and does not “tum[ ] on the presence or absence of a single controlling criterion.” Id. at 226, 93 S. Ct. at 2047. “The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness ....” Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04 (1991); State v. Stone, 362 N.C. 50, 53, 653 S.E.2d 414, 417(2007).
Additionally, in McNeely, though the Supreme Court only specifically addressed the exigency exception to the warrant requirement, McNeely, 569 U.S. at _ n.3, 133 S. Ct. at 1559 n.3, the Court spoke disapprovingly of per se categorical exceptions to the warrant requirement, id. at __, 133 S. Ct. at 1564 (“While the desire for a bright-line rule is understandable, the Fourth Amendment will not tolerate adoption of an overly broad categorical approach that would dilute the warrant requirement in a context where significant privacy interests are at stake.... [A] case-by-case approach is hardly unique within our Fourth Amendment jurisprudence.”). Moreover, language in Birchfteld, though not specifically on point, indicates that taking blood without a warrant is an unreasonable search and seizure under the Fourth Amendment unless an exception to the warrant requirement applies, such as exigent circumstances or valid consent.
It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication *692 or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.
Id. at_, 136 S. Ct. at 2184-85.[9]
Thus, while the specific issue analyzed in Birchfield does not directly address the constitutionality of N.C.G.S. § 20-16.2(b) as applied to defendant, the reasoning and analysis in Birchfield and McNeely, as well as other Fourth Amendment precedent, suggest that blood draws may only be performed after either obtaining a warrant, obtaining Valid consent from the defendant, or under exigent circumstances with probable cause. Here, because Sergeant Fowler relied on N.C.G.S. § 2046.2(b) to take a blood draw outside these circumstances, we conclude that N.C.G.S. § 2046.2(b) was unconstitutionally applied to defendant.[10]
Here there is no dispute that the officer did not get a warrant and that there were no exigent circumstances. Regarding consent, the State’s argument was based solely on N.C.G.S. § 2046.2(b) as a per se exception to the warrant requirement. To be sure, the implied-consent statute, as well as a person’s decision to drive on public roads, are factors to consider when analyzing whether a suspect has consented to a blood draw, but the statute alone does not create a per se exception to the warrant requirement. The State did not present any other evidence of consent or argue that under the totality of the circumstances defendant consented to a blood draw. Therefore, the State did not carry its burden of proving voluntary consent. As such, the trial court correctly suppressed the blood evidence and any subsequent testing of the blood that was obtained without a warrant.
We now turn to the State’s remaining concerns regarding the Court of Appeals’ opinion below. To the extent that the Court of Appeals questioned whether Sergeant Fowler had “reasonable grounds” to believe that defendant had committed the implied-consent offense of DWI, we modify that portion of the opinion. The Court of Appeals stated that “[t]he record does not affirmatively show Defendant was intoxicated while he drove his SUV,” Romano, _ N.C. App. at _, 785 S.E.2d at *693 174; however, a finding of “reasonable grounds” does not require “affirmative proof.” “Reasonable grounds” in this context is equivalent to “probable cause.” See Moore v. Hodges, 116 N.C. App. 727, 729-30, 449 S.E.2d 218, 220 (1994) (citations omitted); Rock v. Hiatt, 103 N.C. App. 578, 584, 406 S.E.2d 638, 642 (1991) (citations omitted). Probable cause for an arrest requires “a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty”; it does not require that “the evidence . . . amount to proof of guilt, or even to prima facie evidence of guilt.” State v. Harris, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971).
The record shows that defendant stopped his vehicle at a congested intersection in the middle of the day, left the vehicle while wearing his sweater backwards, and proceeded to stumble across four lanes of traffic. Defendant had a bottle of rum in his possession, and had vomited on himself and in his vehicle before exiting the SUV. When police arrived, defendant was incoherent with slurred speech; his eyes were bloodshot; he smelled strongly of alcohol; and he could not stand or sit without assistance. Thus, there was sufficient evidence in the record to show that Sergeant Fowler had reasonable grounds to believe defendant had committed a DWI offense. Furthermore, defendant has never contested this issue on appeal and has conceded that there were reasonable grounds to believe he committed a DWI offense.
The State also argues that there was no state action and that the good faith exception and the inevitable discovery and independent source exceptions to the exclusionary rule are applicable in this case. A review of the record reveals that the State did not advance these arguments at the suppression hearing; accordingly, the issues are waived and are not properly before this Court. N.C. R. App. P. 10; see State v. Cooke, 306 N.C. 132, 136-38, 291 S.E.2d 618, 621-22 (1982) (stating that a party is limited to specific grounds argued to the trial court and concluding in particular that the State cannot assert new bases to justify admissibility of evidence obtained from a warrantless search for the first time on appeal).
Here defendant argued at the suppression hearing that the statute’s per se exception to the warrant requirement was unconstitutional under McNeely, and the trial court specifically asked the parties for additional research regarding “the constitutionality of the statute ... in regard to the unconscious defendant.” The State was aware that the statute’s constitutionality was questionable and that Sergeant Fowler’s actions may have been illegal. The State had the opportunity at the suppression *694 hearing to argue that the good faith exception to the exclusionary rule should apply if the court determined that the officer’s actions were unconstitutional, but the State failed to raise the argument. N.C. R. App. P. 10; see, e.g., State v. Rodrigues, 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985) (per curiam) (holding that the State, when seeking reversal of a trial court’s grant of a motion to suppress, waived the argument that a good faith exception to the exclusionary rule applied because “the State had never presented the issue ... to the trial court” and observing that “[i]t is a generally accepted rule that issues not raised at the trial level will not be considered on appeal” (citations omitted)).
Additionally, the trial court explicitly invited the parties to make an argument regarding whether the nurse was a third-party actor; the State made no argument that the nurse was not a state actor, or that the seizure of the blood was not an act of the State and thus, was not subject to the Fourth Amendment’s search and seizure analysis. See Cooke, 306 N.C. 132, 136, 291 S.E.2d 618, 621 (1982) (concluding that the State could not advance the argument on appeal that “the Fourth Amendment does not apply” when it “failed to [present this argument] at the suppression hearing in the trial court”); see also United States v. McGee, 736 F.3d 263, 269 (4th Cir. 2013) (noting that the government bears the burden to prove, as an initial matter, that a challenged search or seizure is not unlawful (citing, inter alia, Welsh v. Wisconsin, 466 U.S. 740, 749-50, 104 S. Ct. 2091, 2097 (1984)), cert denied, _ U.S. _, 134 S. Ct. 1572 (2014).
Though we do not address the merits of the State’s arguments regarding these exceptions to the exclusionary rule, we will address the State’s concerns regarding the Court of Appeals’ statements of law pertaining to these issues. The Court of Appeals’ opinion seems to limit the federal good faith exception’s[11] applicability to situations in which law enforcement reasonably relies on a magistrate’s warrant that is later found to be invalid; however, this is not the only situation in which the good faith exception to the exclusionary rule may apply. For example, the good faith exception also applies to searches conducted in reasonable reliance on subsequently invalidated statutes, as well as searches conforming to appellate precedent. See Davis v. United States, 564 U.S. 229, 237-41, 131 S. Ct. 2419, 2428-29 (2011); Illinois v. Krull, 480 U.S. 340, 349-60, 107 S. Ct. 1160, 1166-72 (1987). Additionally, to the extent that *695 the Court of Appeals conflated the state action analysis with the independent source and inevitable discovery analysis in concluding that “the nurse cannot be an independent lawful source,” we clarify that whether a third party is acting as an agent of the State and whether the independent source exception to the exclusionary rule applies are separate determinations.
In sum, we hold that N.C.G.S. § 20-16.2(b) is unconstitutional under the Fourth Amendment as applied to defendant in this case. We also hold that the State’s state action, good faith, and independent source claims are not properly before us.
For the foregoing reasons we affirm as modified herein the Court of Appeals’ opinion affirming the trial court’s order suppressing any testing of defendant’s blood. We remand this case to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.
MODIFIED AND AFFIRMED; REMANDED.

. At the suppression hearing, defendant made an oral motion to suppress the car keys and identification that were retrieved from him before he was transported to the hospital. The trial court denied suppression of the keys and identification; that order is not at issue in this appeal.

. We recognize that other courts have grappled with the application of McNeely and Birchfield to implied-consent statutes as applied to unconscious DWI suspects and have reached differing conclusions. Compare People v. Hyde, 2017 CO 24, ¶ 32, _ P.3d _ ,_ (holding that blood draw from an unconscious suspect was constitutional because statutory implied consent satisfies the consent exception to the Fourth Amendment warrant requirement), with State v. Havatone, 241 Ariz. 506, _, 389 P.3d 1251, 1253, 1255 (2017) (holding that the “unconscious clause” of the implied-consent statute was unconstitutional as applied to the defendant and further determining that the “unconscious clause” can be constitutionally applied only when exigent circumstances prevent law enforcement from obtaining a warrant). See generally Bailey v. State, 338 Ga. App. 428, 434 & n. 42, 790 S.E.2d 98, 103 & n.42 (2016) (“[IJmplied consent of an unconscious suspect is insufficient to satisfy the Fourth Amendment.”) (collecting cases).

. In State v. Garcia-Lorenzo the Court of Appeals again mentioned N.C.G.S. § 20-16.2(b) without specifically addressing or discussing the constitutionality of the statute. 110 N.C. App. 319, 430 S.E.2d 290 (1993). In that case the court relied on Schmerber, 384 U.S. 767, 86 S. Ct. 1826, and State v. Howren, 312 N.C. 454, 456, 323 S.E.2d 335, 337 (1984), in determining that the defendant’s constitutional rights to due process and to be free from illegal search and seizure were not violated. Garciar-Lorenzo, 110 N.C. App. at 330,430 S.E.2d at 296. The court also concluded that the defendant’s statutory rights under N.C.G.S. 20-16.2 were not violated. Id. at 330-32,430 S.E.2d at 296-97.

. Though Hollingsworth has been credited with upholding N.C.G.S. § 20-16.2(b) as constitutional, in Hollingsworth the court did not rely on section 20-16.2(b) for its rationale, and the constitutional analysis of the blood draw in Hollingsworth would have been the same with or without the statute. 77 N.C. App. at 41-42, 334 S.E.2d at 467.

. The Court of Appeals in Hollingsworth premised its decision, as did many courts across the country, on Schmerber’s holding that indicated that all DWI cases involve exigent circumstances based solely on the fact that alcohol begins to naturally dissipate in the blood stream after a person stops drinking. See, e.g., State v. Shriner, 751 N.W.2d 538 (Minn. 2008) (holding that the natural dissipation of blood alcohol evidence is per se exigency), cert. denied, 555 U.S. 1137, 129 S. Ct. 1001 (2009); State v. Bohling, 173 Ms. 2d 529, 494 N.W.2d 399 (same), cert. denied, 510 U.S. 836, 114 S. Ct. 112 (1993); see also State v. Woolery, 116 Idaho 368, 775 P.2d 1210 (1989) (same), overruled by State v. Wulff, *687 157 Idaho 416, 337 P.3d 575 (2014). The Supreme Court of the United States corrected this interpretation of Schmerber in its analysis of McNeely as discussed below. See McNeely, 569 U.S. at _, 133 S. Ct. at 1558-63.

. McNeely distinguishes blood-testing cases from other destruction-of-evidence cases in which a suspect “has control over easily disposable evidence,” such as Cupp v. Murphy, 412 U.S. at 296, 93 S. Ct. at 2004, in which the defendant was trying to get rid of evidence under his fingernails. McNeely, 569 U.S. at _, 133 S. Ct. at 1561. Blood alcohol concentration, on the other hand, “naturally dissipates over time in a gradual and relatively predictable manner.” Id. at _, 133 S. Ct. at 1561.

. In Seders v. Powell, 298 N.C. 453, 259 S.E.2d 544 (1979), this Court discussed the purpose and rationale for this implied-consent statute.
By accepting his license and operating a motor vehicle on our highways, plaintiff consented to submitting to a [chemical analysis] if arrested for driving under the influence. ... We think the legislature wisely enacted the statute in question. Its purpose is to provide scientific evidence of intoxication not only for the purpose of convicting the guilty and removing them from the public highways for the safety of others, but also to protect the innocent by eliminating mistakes from objective observation such as a driver who has the odor of alcohol on his breath when in fact his consumption is little or those who appear to be intoxicated but actually suffer from some unrelated cause. Public policy behind such a statute is a sound one. It ensures civil cooperation in providing scientific evidence and avoids incidents of violence in testing by force. It gives an arrested person a reasonable time to make up his mind about the test and yet does not tie up officers involved for an unreasonable amount of time which would interfere with their regular duties.
Id. at 46465, 259 S.E.2d at 551-52.

. As discussed above, there is no dispute that the constitutionality of N.C.G.S. § 2046.2(b) cannot be upheld under a per se exigency rationale. In McNeely the Supreme Court concluded that the natural dissipation of alcohol in the blood stream does not always constitute an exigency justifying the warrantless taking of a blood sample. 569 U.S. at _, 133 S. Ct. at 1556. Exigent circumstances must be determined by the totality of the circumstances on a case-by-case basis. Id. at _, 133 S. Ct. at 1559.

. This statement was made during the Court’s analysis of whether a warrantless blood draw could be justified as a search incident to arrest. We believe that that the sentiment is also applicable to our analysis of implied consent.

. Our analysis here is limited to N.C.G.S. § 20-16.2(b) and does not address any other provision of the implied-consent statute.

. We specify that this is the federal good faith exception to the exclusionary rule because in State v. Carter this Court declined to adopt a good faith exception to the state constitution’s exclusionary rule. 332 N.C. 709, 724, 370 S.E.2d 653, 562 (1988).