IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-408

Filed 05 July 2023

Buncombe County, No. 14 CRS 5011

STATE OF NORTH CAROLINA

v.

KYLE ALLEN BURRIS, Defendant.

Appeal by defendant from judgment entered 11 August 2021 by Judge Jacqueline D. Grant in Buncombe County Superior Court. Heard in the Court of Appeals 8 March 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Phillip T. Reynolds, for the State.*

*Kimberly P. Hoppin for the Defendant.*

DILLON, Judge.

Defendant Kyle Allen Burris appeals from a judgment entered upon a jury verdict convicting him of driving while impaired and reckless driving to endanger. We conclude that Defendant received a fair trial, free of reversible error.

## I.   Background

On the evening of 22 November 2014, a law enforcement officer responded to a single-vehicle accident in Buncombe County. Upon arriving at the scene, the trooper saw a pickup truck off the right side of the road. The vehicle was up against a steel

fence and had sustained extensive damage. The trooper found Defendant lying trapped under the steel fence outside the vehicle. Defendant was unresponsive and appeared to suffer from severe injuries. He was bleeding excessively. He smelled of alcohol. The trooper found open beer cans, both inside and outside the vehicle. Defendant was eventually taken to the hospital, still unconscious, while the trooper remained at the scene. The trooper was able to determine that Defendant was the owner of the vehicle, and there was no evidence at the scene that anyone else was riding in the vehicle when the wreck occurred.

Defendant was convicted by a jury in superior court for driving while impaired and reckless driving to endanger. Defendant timely appealed.

## II.    Analysis

Defendant raises two issues on appeal, which we address in turn.

### A. Evidence That Defendant Was Driving the Vehicle

Defendant makes two arguments concerning the evidence that he was, in fact, driving the wrecked vehicle.

First, Defendant contends the trial court erred when it allowed certain evidence showing the trooper believed Defendant driving the vehicle when it wrecked. This argument pertains to both Defendant's driving while impaired conviction and his reckless driving to endanger convictions, both of which required the State to prove that Defendant was driving the vehicle when the wreck occurred.

We agree that the trooper's opinion testimony that Defendant was the driver

was inadmissible because the trooper did not personally observe Defendant driving the vehicle. *See* N.C. Gen. Stat. § 8C-1, Rule 701 (2021) (Lay testimony is generally confined to a witness's personal observations); *State v. Fulton*, 299 N.C. 491, 494, 263 S.E.2d 608, 610 (1980) (stating that "[o]rdinarily opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury.")

However, we conclude the admission of the trooper's opinion testimony does not constitute reversible error in this case. In so holding, we note the trial court gave a curative instruction regarding the trooper's opinion testimony. Specifically, the trial court expressly stated that the officer would be permitted to talk about what he observed during his post-crash investigation of the scene, but that he would not be permitted to "conclusively say [Defendant] was the driver". The trial court instructed the jury to disregard the trooper's opinion testimony, stating:

> The Court is going to sustain the defendant's objection to the extent [the officer] has referred to the defendant as "the driver." The jury is to disregard any testimony referring to the defendant as "the driver", because that's actually an issue that you will decide as the jury.

*See State v. Black*, 328 N.C. 191, 200, 400 S.E.2d 398, 404 (1991) ("When the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured.")

Further, assuming the trial court's curative instruction was insufficient, Defendant has failed to establish that he was prejudiced by the officer's statement, as Defendant failed to object to *other* evidence tending to show the trooper believed

Defendant to be the driver. *See State v. Delau*, 381 N.C. 226, 237, 872 S.E.2d 41, 48 (2022) (holding that any error in allowing an officer to testify about the driver's identity was not prejudicial when the warrant application admitted without objection contained the same information, the officer's conclusion that the defendant was driving). For example, Defendant did not object when the State offered the trooper's "Affidavit and Revocation Report" as evidence, which contained multiple references to Defendant as the driver.

Second, Defendant argues the trial court erred when it denied Defendant's motion to dismiss the charges for insufficient evidence showing Defendant was the driver. To survive a motion to dismiss, there must be substantial evidence of each essential element of the crime and that the defendant is the offender. *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015). When considering the motion, evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference. *Id*. at 574, 780 S.E.2d at 826.

We conclude there was sufficient evidence from which the jury could find that Defendant was driving the vehicle when the crash occurred. In addition to the State's exhibits which were not objected to which described Defendant as the driver, there was evidence that Defendant was found alone at the accident scene and that Defendant was the owner of the vehicle. *See, e.g., State v. Ray*, 54 N.C. App. 473, 475, 283 S.E.2d 823, 825 (1981) ("It is possible that other circumstantial evidence – such as … evidence as to the [defendant's] ownership of the automobile – in addition to the

testimony of the officer [finding the defendant alone in a vehicle that was running]" would be sufficient to meet the State's burden of showing the defendant was driving the vehicle). When viewed in the light most favorable to the State, we conclude that the evidence was sufficient to survive Defendant's motion to dismiss.

## B. Warrantless Blood Draw

At trial, the jury was instructed it could convict Defendant of drunk driving *solely* on the grounds that Defendant's blood alcohol level was above the legal limit. N.C. Gen. Stat. § 20-138.1(a)(2) (2021). It was on this ground that Defendant was convicted of this charge. Defendant argues the trial court erred by denying his motion to suppress the warrantless blood draw, the results of which were the only evidence that his blood alcohol level exceeded the legal limit.

The evidence concerning the blood draw showed that Defendant was transported to the hospital, that the trooper went directly to the hospital after completing his work at the crash scene, and that the trooper obtained a blood sample from Defendant while Defendant remained unconscious.

Blood tests are considered a search under both the federal and North Carolina constitutions. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Accordingly, "blood draws may only be performed after either obtaining a warrant, obtaining valid consent from the defendant, or under exigent circumstances with probable cause." *State v. Romano*, 369 N.C. 678, 692, 800 S.E.2d 644, 653 (2017).

Here, the trooper did not obtain a warrant prior to obtaining a blood sample

from Defendant at the hospital.

Also, Defendant did not give *express* consent for the blood draw as he was unconscious throughout. Our General Assembly, however, has provided that a driver has given *implied* consent to a blood draw when he is found unconscious and there is reasonable grounds to suspect that he has been driving while impaired. N.C. Gen. Stat. § 20-16.2(b) (2021). Our Supreme Court has limited the scope of this statute by holding that the Fourth Amendment is violated when an unconscious driver is deemed as consenting to a blood draw based on this implied consent statute for purposes of an impaired driving prosecution. *See Romano*, 369 N.C. at 691, 800 S.E.2d at 652 (stating that Section 20-16(b) is not "a per se categorical exception to the warrant requirement.")

We, therefore, consider whether there were sufficient exigent circumstances to justify the trooper's action in not first obtaining a warrant before obtaining a draw of Defendant's blood. Our resolution of this issue is controlled by the recent United States Supreme Court decision in *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019).

*Mitchell*, decided two years after our Supreme Court decided *Romano*, concerned the constitutionality of a warrantless blood draw from an unconscious motorist suspected of impaired driving in a state with an implied consent statute similar to our implied consent statute.

A four-judge plurality of the Court in *Mitchell* - sidestepping the issue as to whether prosecutors can rely on an implied consent statute to show consent by an

unconscious driver to a blood draw – held that exigent circumstances "almost always" exist to conduct a warrantless blood draw where an unconscious driver is taken to the hospital[1]:

> Thus, exigency exists when (1) BAC evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application. Both conditions are met when a drunk-driving suspect is unconscious []: With such suspects, too, a warrantless blood draw is lawful.
>
> … [U]nconsciousness does not just create pressing needs; it is *itself* a medical emergency. . . . Police can reasonable anticipate that . . . [the defendant's] blood may be drawn anyway, . . . and that immediate medical treatment could delay (or otherwise distort the results of) a blood draw conducted later, upon receipt of a warrant, thus reducing evidentiary value.
>
> \* \* \*
>
> When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC [blood alcohol content] without offending the Fourth Amendment.

---

[1] The plurality opinion, authored by Justice Alito, garnered the votes of three other justices. Justice Thomas concurred in the judgment. Justice Thomas argued that the natural metabolism of alcohol in the blood means that exigent circumstances are present whenever someone is suspected of driving under the influence of alcohol. *Mitchell*, 139 S. Ct. at 2539-41 (Thomas, Justice concurring). Because Justice Alito's opinion is based on a narrower ground, it represents the Court's holding. See *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'" (quoting *Gregg v. Georgia*, 428 U.S.153, 169 n. 15 (1976) (plurality opinion))).

*Id.* at 2537-39. The Court, though, remanded that case to allow *the defendant* a chance to show his was the "unusual case" that would require a warrant, seemingly placing on the defendant the burden to make this showing where the State proves that the defendant was unconscious and needed treatment at a hospital:

> We do not rule out the possibility that in an unusual case *a defendant would be able to show* that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties. *Because [the defendant] did not have a chance to attempt to make that showing*, a remand for that purpose is necessary.

*Id.* (emphasis added). In remanding the case, the Court was not saying that a defendant has the *initial* burden to prove a lack of exigent circumstances. The Court recognized the State has this burden of showing exigency but was stating that the State meets this burden by showing the defendant was unconscious and in need of medical attention at a hospital. The Court then simply recognized that, where the State makes this showing, the defendant should have the opportunity to offer evidence of other facts to show a lack of exigency. *See State v. Mitchell*, 404 Wis.2d 103, 110-15 (2022) (after remand from the United States Supreme Court, Wisconsin intermediate appellate court concludes the defendant failed to meet his burden of showing his was an unusual case); *McGraw v. State*, 289 So.3d 836, 839 (Fla. 2019) (Florida Supreme Court remands so "[the defendant] can be given the opportunity to demonstrate" his was an unusual case which required a warrant); *Peoples v. Eubanks*,

160 N.E.3d 843, 864 (2019) (Illinois Supreme Court interprets *Mitchell* as stating "in cases where the "general rule" applies, the burden shifts to defendant to establish a lack of exigent circumstances.")  *But see State v. Key*, 848 S.E.2d 315, 316 (South Carolina Supreme Court refusing to shift the burden to the defendant to show his to be an unusual case).

In the case before us, the trial court's findings show the State met its burden of showing exigency under *Mitchell*.  It found in its written order that Defendant was unconscious and badly injured at the crash scene when the trooper arrived; the trooper spent an hour investigating and securing the scene during which Defendant was transported by ambulance to a hospital; the trooper then went directly to the hospital; and Defendant had been sedated and was still unconscious when the trooper arrived.  Further, the trial court stated from the bench:

> As [the officer] testified, [Defendant] had become unresponsive. That his injuries were such [the officer] was concerned that he would probably have to undergo surgery, and it could even possibly lead to a fatality. And in those circumstances, the blood alcohol evidence would dissipate as more time passed. You don't know how long the defendant would have been in surgery, what additional medical treatment would have been rendered. And as a result of that, that would have created exigent circumstances that the Court finds not taking the time to go get a warrant from the magistrate's office, not knowing how long that will take, depending on when the magistrate was available, what's going on with the jail.

> So the Court finds that exigent circumstances existed, which justified getting the blood draw from the defendant. So again, the motion to suppress is denied.

However, we conclude that the matter need not be remanded. The *Mitchell* Court remanded the case before it to allow the defendant a chance to offer evidence "[b]ecause [the defendant] did not have a chance to attempt to make that showing [that his was an unusual case]." *See Mitchell*, 139 S. Ct. at 2539. Here, though, the record shows Defendant did have that opportunity, as the *Mitchell* case was discussed at length at the hearing. And, on appeal, Defendant does not cite *Mitchell* or otherwise make any argument that he was not afforded the opportunity to make the showing at the hearing. We, therefore, conclude that the trial court did not commit reversible error by allowing the results of the warrantless blood draw into evidence.

NO ERROR.

Judges GORE concurs.

Judge TYSON concurs in part and dissents in part with separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

I concur with the majority's holding the trial court erred by allowing the state trooper, as a lay witness, to testify Defendant was the driver of the vehicle for either charge, because the trooper never observed Defendant drive, being seated behind the wheel, or even present inside of the vehicle. This error was cured by the trial judge's instruction to disregard this testimony.

The trial court erred in denying Defendant's motion to suppress the Defendant's blood alcohol concentration ("BAC") level, derived solely from the warrantless blood draw without the State proving probable cause and exigent circumstances, and where the jury was instructed solely on Defendant's BAC level as evidence to support Defendant's guilt. I respectfully dissent.

### III.    Fourth Amendment

The Fourth Amendment of the Constitution of the United States *guarantees*: "The right of the people to be *secure in their persons*, houses, papers, and effects, *against unreasonable searches and seizures*, shall not be violated, and *no Warrants shall issue*, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized.*" U.S. Const. amend. IV. (emphasis supplied).

The Supreme Court of the United States ruled:

> The interests in human dignity and privacy which the
> Fourth Amendment protects forbid any such intrusions on
> the mere chance that desired evidence might be obtained.

> In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Schmerber v. California*, 384 U.S. 757, 770, 16 L. Ed. 2d 908, 919 (1966).

"The [Fourth] Amendment thus prohibits 'unreasonable searches,' . . . [and] the taking of a blood sample . . . is a search." *Birchfield v. North Dakota*, 579 U.S. 438, 455, 195 L. Ed. 2d 560, 575 (2016) (citations omitted). *Accord State v. Carter*, 322 N.C. 709, 714, 370 S.E.2d 553, 556 (1988).

The Supreme Court of North Carolina has held: "drawing blood . . . constitutes a search under both the Federal and North Carolina Constitutions." *State v. Romano,* 369 N.C. 678, 685, 800 S.E.2d 644, 649 (2017) (citations omitted). "[B]lood draws may only be performed after either obtaining a warrant, obtaining valid consent from the defendant, or under exigent circumstances with probable cause." *Id.* at 692, 800 S.E.2d at 653.

The Supreme Court of the United States further held: Blood tests: (1) "require piercing the skin and extract[tion of] a part of the subject's body"; (2) are "significantly more intrusive than blowing into a tube"; and (3) place in the hands of law enforcement "a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading." *Birchfield*, 579 U.S. at 463-64, 195 L. Ed. 2d at 580 (citations and internal quotation marks omitted).

Our Supreme Court adopted and interpreted the test in *Schmerber*, as

"forbidding law enforcement authorities acting without a search warrant from requiring a defendant to submit to the drawing of a blood sample unless probable cause and exigent circumstances exist to justify a warrantless seizure of the blood sample." *State v. Welch*, 316 N.C. 578, 587, 342 S.E.2d 789, 794 (1986) (citing *Winston v. Lee*, 470 U.S. 753, 84 L. E. 2d 662 (1985) (clarifying how North Carolina courts construe the *Schmerber* factors). Without probable cause and exigent circumstances, or another exception to the warrant requirement, a warrantless search violates the Fourth Amendment to the Constitution of the United States and Article One, Section Nineteen of the North Carolina Constitution, and any evidence illegally obtained must be excluded. *Id.*; U.S. Const. amend. IV; N.C. Const. art. 1, § 19.

The Supreme Court of the United States in *Schmerber* also explained the Fourth Amendment's warrant requirement is not a mere formality, but requires necessary judgment calls that are made "by a neutral and detached magistrate," and not "by the officer engaged in the often competitive enterprise of ferreting out crime." *Schmerber,* 384 U.S. at 770, 16 L. Ed. 2d at 919 (citation and quotation marks omitted). This default Constitutional requirement for and specificity of a warrant, and the further prohibition against General Warrants, serves as bulwark protections of individual liberties against warrantless searches and seizures, which violate the Fourth Amendment. A warrant issued "by a neutral and detached magistrate" also ensures a police officer is not the sole interpreter of the Constitution's protections and an individual's "interests in human dignity and privacy" are protected. *Id.*

3

A search conducted without a warrant is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967) (citations and footnotes omitted). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California,* 573 U.S. 373, 382, 189 L. Ed. 2d 430, 439 (2014) (citation omitted). The narrow exception of probable cause and exigent circumstances to the warrant requirement is necessarily limited. The burden to prove necessity and exigency to proceed without a warrant remains on the State and does not shift to Defendant. *See Welsh v. Wisconsin,* 466 U.S. 740, 749-50, 80 L. E. 2d 732, 743 (1984) ("Prior decisions of this Court, however, have emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." (internal citations omitted)).

The record and testimony show the trooper took an hour or two to complete his work at the scene before going directly to the hospital to confront Defendant. The trooper stated he went to the hospital, rather than a magistrate for a warrant, because Defendant might be headed into surgery. Upon arrival at the hospital, he located and "advised" the injured and unconscious Defendant of his chemical analysis rights for a Breathalyzer and asserted he could not perform a breath test on Defendant.

The trial court found exigent circumstances existed to deny Defendant's motion to suppress by holding:

> [T]he blood alcohol evidence would dissipate as more time passed. You don't know how long the defendant would have been in surgery, what additional medical treatment would have been rendered. And as a result of that, that would have created exigent circumstances that the Court finds justifies not taking the time to go get a warrant from the magistrate['s] office, not knowing how long that will take, depending on when the magistrate was available, what's going on with the jail.
>
> So the Court finds that exigent circumstances existed, which justified getting the blood draw from the defendant. So, again, the motion to suppress is denied.

None of these factors, individually or collectively, excuse the requirement of a warrant. "[T]he natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Romano*, 369 N.C. at 687, 800 S.E.2d at 656 (citation and internal quotation marks omitted).

The majority's opinion cites *Mitchell v. Wisconsin*, 588 U.S. __, 204 L. Ed. 2d 1040 (2019), which neither party argues nor relies upon in their briefs, to support its conclusion. None of those facts or conditions in *Mitchell* support their result to allow the needle-extracted, unrestricted search under these facts to allow "a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading." *Birchfield*, 579 U.S. at 463-64, 195 L. Ed. 2d 560, 566-67. *"[N]o Warrants shall issue,* but upon probable cause, supported by Oath or affirmation, *and*

*particularly describing the place to be searched*, and the persons *or things to be seized."* U.S. Const. amend. IV (emphasis supplied).

The majority's opinion unconstitutionally shifts the burden onto the Defendant *to prove the default necessity of a warrant!* The Fourth Amendment *guarantees and mandates the requirement of a warrant,* and their analysis of the narrow warrantless search exception becomes: why do you need a detached neutral magistrate upon "probable cause, supported by Oath or affirmation" to issue a specified search warrant before your bodily fluids are extracted and removed from your body, while injured, unconscious, and without restrictions? That result simply cannot be what the Founders and Framers intended. *Schmerber,* 384 U.S. at 770, 16 L. Ed. 2d at 919 (explaining necessary judgment calls are to be made "by a neutral and detached magistrate," and not "by the officer engaged in the often competitive enterprise of ferreting out crime").

The Bill of Rights was demanded to amend the Constitution to protect individuals from the interference and overreach of government officials, and, most specifically, to protect the privacy and rights of individuals, particularly those unconscious or utterly incapable, like infants and incompetents, of asserting their rights or providing informed consent. *See* Patrick M. Garry, *Liberty Through Limits: The Bill of Rights as Limited Government Provisions*, 62 SMU L. REV. 1745, 1757 (2009) ("In the view of the Anti-Federalists, the Bill of Rights would set 'limits' and build 'barriers' against government abuse or enlargement of its powers. The purpose

of the Bill of Rights would be to limit the exercise of delegated powers, thus providing a second limitation on the power of government. . . . But the Bill of Rights placed limits on even those enumerated powers, forbidding the federal government from using its enumerated powers to encroach on areas protected by the Bill of Rights."); *Olmstead v. United States*, 277 U.S. 438, 478, 72 L. Ed. 944, 956 (1928) (Brandis, J., dissenting) (stating the Founders "conferred, as against the Government, the right to be let alone – the most comprehensive of rights and the right most valued by civilized men").

## IV.    Fifth Amendment

A law enforcement officer giving warnings and reading "rights" to an injured and unconscious person at a hospital, who is utterly incapable of understanding and giving informed consent, prior to demanding and compelling medical personnel to draw his blood without his knowledge is the height of hypocrisy.  This warrantless blood extraction makes a mockery of both the Fourth Amendment's protections of "the right of the people to be secure in their persons" and the prohibitions "against unreasonable searches and seizures."  U.S. Const. amend. IV.

The Fifth Amendment's right against self-incrimination, and *Miranda* warnings of the individual's "right to remain silent" were instituted to avoid compelled interrogations and testimony or evidence derived from "General Warrants" or warrantless searches.  "No person shall be . . . compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due

process of law. U.S. Const. amend. V. While the Supreme Court of the United States has held "that forcing drunk-driving suspects to undergo a blood test does not violate their constitutional right against self-incrimination," the Supreme Court also demanded a "blood test" must be based upon probable cause and ordered by a detached and neutral magistrate's warrant. *Mitchell*, 588 U.S. at __, 204 L. E. 2d at 1046 (citing *Schmerber*, 384 U.S. at 765, 16 L. Ed. 2d at 917).

"[T]hese fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *Schmerber*, 384 U.S. at 769-70, 16 L.Ed.2d at 919. The Supreme Court of North Carolina agreed and has also held: "[T]he natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *State v. Romano*, 369 N.C. 678, 687, 800 S.E.2d 644, 656 (2017) (quotation marks omitted) (quoting *Missouri v. McNeely*, 569 U.S. 141, 165, 185 L. Ed. 2d 696, 715 (2013)).

The fact that a suspect fell unconscious at some point or was going into surgery does not equate to insufficient time for the trooper to seek and demonstrate probable cause to obtain a warrant. If an officer has the time to secure a warrant prior to the blood draw, "the Fourth Amendment mandates that they do so[,]"and the burden of the officer's failure to do so rests upon the State. *McNeely*, 569 U.S. at 152, 185 L. Ed. 2d at 707 (citation omitted).

The trooper testified, and the trial court found, the trooper did not obtain a

8

warrant because there might be a line and he might have to wait on a magistrate to review his sworn affidavit for probable cause and application to issue the warrant. That is the point of requiring a warrant. The trooper's assertion is sheer conjecture. Even if true, no evidence was presented by the State to support this "reason" or "exigency" for failing to secure a warrant.

Presuming probable cause existed, exigent circumstances did not require an immediate warrantless blood draw, since the hospital would have already drawn Defendant's blood for typing and tests upon arrival. *See State v. Scott*, 278 N.C. App. 354, 861 S.E.2d 892 (2021) (involving blood samples taken upon defendant's arrival at the hospital and picked up a week after being drawn).

Additionally, the possibility of Defendant's death during surgery did not provide an exigency. If deceased, Defendant would not have been charged in any event.

The trial court's finding to support denial of Defendant's motion to suppress was:

> As [the trooper] testified, [Defendant] had become unresponsive. That his injuries were such [the trooper] was concerned that he would probably have to undergo surgery, and it could even possibly lead to a fatality. And in those circumstances, the blood alcohol evidence would dissipate as more time passed. You don't know how long the defendant would have been in surgery, what additional medical treatment would have been rendered. And as a result of that, that would have created exigent circumstances that the Court finds justifies not taking the time to go get a warrant from the magistrate['s] office, not

> knowing how long that will take, depending on when the magistrate was available, what's going on with the jail.

All these stated reasons, considered individually or together, are pretextual to avoid the Fourth Amendment's requirement for a warrant. *McNeely*, 569 U.S. at 152, 185 L. Ed. 2d at 715 (explaining that if the police have time to secure a warrant before the blood draw, "the Fourth Amendment mandates that they do so").

The purported possibility the magistrate might be delayed, Defendant's unconsciousness, or possibility of BAC dissipation does not excuse the trooper's inaction and does not create an exigent circumstance to justify the trooper's failure to seek a warrant or to order or compel a medical professional to act contrary to Defendant's rights. The burden to show probable cause and the reasons for the absence of a warrant rests upon the State, not the Defendant. That burden does not shift. The State's evidence and this finding does not support the trial court's denial of Defendant's motion to suppress. Defendant's arguments have merit.

## V.  The State's Burden on Remand

The majority's opinion cites *Mitchell's* purported exception to warrantless exigent circumstances exception by quoting: "We do not rule out the possibility that in an unusual case *a defendant would be able to show* that his blood would not have been drawn if police had not been seeking BAC information, *and* that police could *not have reasonably judged that a warrant application would interfere* with other pressing needs or duties." *Mitchell*, 588 U.S. at __, 204 L. Ed. 2d at 1052 (emphasis

10

supplied).  The burden to explain and show the absence of a warrant rests solely upon the State, not the Defendant, and judging the affidavit and application for a warrant and probable cause rests solely with the neutral detached magistrate, not the officer. *Schmerber,* 384 U.S. at 770, 16 L. Ed. 2d at 919 (explaining judgment calls are to be made "by a neutral and detached magistrate," and not "by the officer engaged in the often competitive enterprise of ferreting out crime").

I agree with the Supreme Court of South Carolina's refusal, upon very similar facts, to apply *Mitchell* in a manner to purportedly shift the burden onto a defendant to show his to be an unusual case to challenge the warrantless extraction of his blood. *State v. Key*, 848 S.E.2d 315, 316 (S.C. 2020) ("We have carefully considered the *Mitchell* holding and conclude we will not impose upon a defendant the burden of establishing the absence of exigent circumstances. We hold the burden of establishing the existence of exigent circumstances remains upon the State.").  *Accord McDonald v. United States*, 335 U.S. 451, 456, 93 L. Ed. 153, 158 (1948) ("We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."); *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("The government bears the burden of proof in justifying a warrantless search or seizure.").

The State's brief and the trial court's findings concede the trooper had completed his work on the scene and avoided seeking the warrant from the

magistrate because he did not want to wait in line or he pre-supposed the magistrate may be busy with other cases, the alcohol evidence may dissipate, and Defendant might die. None of these assertions or findings are exigent to supplant nor excuse the mandate of a warrant "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

## VI.    Constitutional Error Standard of Review

"[B]efore a federal constitutional error can be held [to be] harmless, the court must be able to declare a belief [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11 (1967). *See also Davis v. Ayala*, 576 U.S. 257, 267, 192 L. Ed. 2d 323, 332-33 (2015); N.C. Gen. Stat. § 15A-1443(b) (2021).

The burden falls "upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b). *See also Brecht v. Abrahamson*, 507 U.S. 619, 630, 123 L. Ed. 2d 353, 368 (1993); *Chapman*, 386 U.S. at 24, 17 L. Ed. 2d at 711; *State v. Lawrence*, 365 N.C. 506, 513, 723 S.E.2d 326, 331 (2012).

The General Assembly adopted the standard in *Chapman* and stated the General Statutes of North Carolina "reflects the standard of prejudice with regard to violation of the defendant's rights under the Constitution of the United States, as is set out in the case of *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. E. 2d

705 (1967)." N.C. Gen. Stat. § 15A-1443 cmt. (2021).

"When violations of a defendant's rights under the United States Constitution [sic] are alleged, harmless error review functions the same way in both federal and state courts." S*tate v. Ortiz-Zape*, 367 N.C. 1, 13, 743 S.E.2d 156, 164 (2013) (quoting *Lawrence*, 365 N.C. at 513, 723 S.E.2d at 331). *See also State v. Autry*, 321 N.C. 392, 399, 364 S.E.2d 341, 346 (1988) ("[Pre]suming *arguendo* that the search violated defendant's constitutional rights and that the evidence therefrom was improperly admitted at trial, we find any such error in its admission harmless beyond a reasonable doubt.").

Our Supreme Court also deemed the assertion an unconscious driver has consented to a blood draw based on this implied consent statute for purposes of an impaired driving prosecution to violate the Fourth Amendment. *See State v. Romano*, 369 N.C. at 691, 800 S.E.2d at 652-53 (stating that NC Gen. Stat. § 20-16(b) is not "a *per se* categorical exception to the warrant requirement").

The sole basis upon which the jury was instructed to find Defendant guilty of driving while impaired was his BAC level, the result of which was only obtained because of a warrantless blood sample taken without his knowledge or consent and while he was injured and unconscious.

The jury was not instructed on any other statutory grounds of appreciable impairment. While the State's other evidence of odor and beer cans on the scene may have been sufficient to survive a motion to dismiss, the State failed to establish that

the erroneous admission of Defendant's BAC evidence, the only basis submitted to the jury, was harmless beyond a reasonable doubt. Defendant's conviction for driving while impaired is properly reversed.

## VII.    Reckless driving to endanger

The majority and I agree the trooper's testimony asserting Defendant was the driver was inadmissible. Lay witness testimony is generally confined to a witness' personal observations. N.C. Gen. Stat. § 8C-1, Rule 701 (2021); *State v. Lindley*, 286 N.C. 255, 257, 210 S.E.2d 207, 209 (1974) (stating that "[o]pinion evidence is generally inadmissible 'whenever the witness can relate the facts so that the jury will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from the facts[ ]' " (citations omitted)). "[O]pinion evidence of a non-expert witness is [generally] inadmissible because it tends to invade the province of the jury." *State v. Malone-Bullock*, 278 N.C. App. 736, 740, 863 S.E.2d 659, 664 (2021) (citation and internal quotation marks omitted).

The majority and I also agree the trial court cured any improper testimony when it gave the jury the following curative instruction:

> The Court is going to sustain the defendant's objection to the extent [the trooper] has referred to the defendant as "the driver." The jury is to disregard any testimony referring to the defendant as "the driver", because that's actually an issue that you will decide as the jury.

Our Supreme Court has held that where a trial court sustains an objection and instructs the jury to disregard improper testimony, any prejudice is normally cured.

14

*State v. Black*, 328 N.C. 191, 200, 400 S.E.2d 398, 404 (1991) ("The defendant objected[,] and his objection was sustained. The trial court then instructed the jury to disregard the statement. When the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." (citation omitted)).

Defendant's charges of reckless driving to endanger does not *ipso facto* arise solely from Defendant's purported driving while impaired. Reckless driving to endanger is not a lesser-included offense of DWI. N.C. Gen. Stat. § 20-141.6(d) (2021) ("The offense of reckless driving under G.S. 20-140 is a lesser-included offense of the offense set forth in this section."). Some additional evidence, such as excessive speed or a passenger endangered by being located in the vehicle, is required. N.C. Gen. Stat. § 20-140(b) (2021) (providing that "[a]ny person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving."); *see State v. Dupree*, 264 N.C. 463, 466, 142 S.E.2d 5, 7 (1965) ("The mere fact that defendant's automobile was on the left of the center line in the direction it was traveling when the collision occurred, without any evidence that it was being operated at a dangerous speed or in a perilous manner, except being on the wrong side of the road some 40 feet before the collision, does not show on defendant's part an intentional or wilful [sic] violation of G.S. [§] 20-140(b)[.]"). Without lawful evidence of Defendant's BAC, nor additional evidence of

15

Defendant's "reckless driving to endanger," both of Defendant's convictions are properly vacated.

The failure to suppress the BAC, derived solely from extracted blood from a warrantless search, was erroneous and was not harmless beyond a reasonable doubt. On remand, the BAC evidence from the warrantless search should be suppressed and excluded from the jury. I respectfully dissent.